DECISION
This matter is before the Court for decision on the Plaintiffs motion for the issuance of a prejudgment writ of attachment against the Defendant.
The Plaintiff, Linowes and Blocher, LLP ("L and B") is a Maryland limited liability partnership engaged in the practice of law with its principal place of business in Bethesda, Maryland. The Defendant, IDC, Inc. (IDC) is a hospitality operation in Newport, Rhode Island, which, in pertinent part, provided management services to IDC Clambakes, Inc. ("Clambakes").
In October of 2005, IDC, through its president and sole shareholder, Thomas Roos, hired Plaintiff to provide legal consultation services with reference to Clambakes' Chapter 11 bankruptcy petition which had been filed in June of 2005. The Plaintiff now claims that it is entitled to, and that there is a need for an attachment in the amount of $219,572.05, which sum represents unpaid legal fees and expenses owed to the Plaintiff.
The relief being sought by the Plaintiff may be granted "only upon a showing that there is a probability of a judgment being rendered in favor of the Plaintiff and that there is a need for furnishing the Plaintiff security in the amount sought for satisfaction of such judgment, together with interest and costs." Super.R.Civ.P. Rule 4(m)(3).
The Plaintiff asserts, as to the first prong of requisite proof, that its probability of obtaining a favorable judgment is high based on the following evidentiary-based reasons: (1) the *Page 2 
Defendant has not raised a dispute as to the validity of Plaintiff s claims; (2) none of Plaintiff s corporate agents, including principal Roos, ever objected to Plaintiffs invoices; (3) Roos approved all invoices submitted by the Plaintiff and IDC "actually cut checks for each of them." (PL's Post-Hearing Memo, at p. 5); (4) the Plaintiff has failed to furnish any reason for nonpayment; and (5) the Plaintiffs claim of entitlement to the sum in controversy is undisputed.
As to the second prong of proof, the need for security, the Plaintiff identifies the following concerns regarding Plaintiffs ability to satisfy a potential judgment: (1) Defendant corporation has no assets but for $14,000 in "book cash" and depreciated office equipment; (2) the corporation is a zero basis company which produces no net income; (3) the management of the corporation is impaired, in part, due to the "absenteeism" of Mr. Roos and his lack of effective communication with Chief Financial Officer, Tucker Coffin; and (4) the corporation's irregular accounting system is paired with an inability to pay invoices.
The Defendant, regarding the probability of a judgment against it, challenges the "soundness of some entries in Linowes billing records," specifically, an associate's billing for research and the limited extent of court appearances by Attorney Paul Sweeney.
The Defendant also posits that "Linowes will not have difficulty enforcing a judgment against IDC if it is successful on the merits of its claim." (Df's Post-Hearing Memo, at 7). Furthermore, Defendant characterizes its operation as financially healthy and without any motive to wrongfully transfer or conceal any assets.
The Plaintiffs principal witness was Attorney Sweeney, a bankruptcy attorney and partner in the law firm of L and B, a 65-member Maryland-based firm "heavily focused upon real estate, common interests [and] condominium law." Mr. Sweeney is a bankruptcy litigation *Page 3 
specialist who continues to represent debtors, creditors and trustees, who has previously served as a Chapter 7 panel trustee for the Department of Justice.
The professional relationship between the Plaintiff and Defendant was created in October 2005, when Mr. Roos contacted Attorney Sweeney's partner Roger Winston, a nationally recognized expert in condominium law, including common interests litigation. Mr. Winston enlisted Mr. Sweeney as co-counsel when it became evident that there existed a bankruptcy proceeding in tandem with the real estate litigation.
The professional agreement between Plaintiff and Defendant was formalized in an engagement letter dated October 14, 2005, and signed by Mssrs. Winston and Roos (Ex. 1). The letter authorized by Mr. Winston, specified that Plaintiff law firm "contemplated performing legal research and providing consultation regarding the impacts upon IDC, Inc. ("IDC") and the condominium project in question as a result of the decisions reached by the Supreme Court of Rhode Island in the referenced matter." The letter also detailed the sliding scale of hourly fees of various members and associates of the firm, as well as paralegals and law clerks, whose services would potentially be utilized in the consultation. An attachment to the letter, "L and B Procedures," particularized the firm's methods of incremental, as well as monthly billing practices, and informed the client of the possible consequences of delinquency in payment.
The professional services Plaintiff firm thereafter provided generated two separate and distinct series of invoices, one regarding "American Condominium v. IDC, Inc." (Ex. 3) and the other regarding "Bankruptcy Litigation." (Ex. 4). The Court will not recount within this decision the contents of these financial records as they have been sealed. Suffice it to say, by way of characterization, that the exhibits present as a fastidious chronology of billed events and tasks accompanied by a precise accounting for professional time expended. *Page 4 
For the time period comprised of May 5, 2006 through September 15, 2006, IDC made regular payments to Plaintiff by way of checks signed by Mr. Roos. The sum total of the aforementioned payments is $282,979.48, leaving an outstanding balance of $219,572.05.
Despite repeated and sustained efforts, Mr. Sweeney had only marginal success communicating with Mr. Roos, and no success whatsoever in determining the reason for the unpaid invoices. Mr. Sweeney thus directed his inquiries to IDC managers Cathleen DeCosta and Don Podesla, who informed him that Mr. Roos was the sole individual authorized to "make decisions" and "sign checks." The record in this Court is bereft of any defense explanation or justification for non-payment of the outstanding balance. Moreover, there is no evidence that Mr. Roos ever complained about or challenged the nature or extent of the services rendered. Mr. Roos also failed to appear as a witness during the pertinent hearings to furnish any opposing evidence.
The defense did, however, present the testimony of IDC's Chief Financial Officer, Tucker Coffin, as well as IDC's Assistant Director of Operations, Cathleen DeCosta. Mr. Coffin explained that Mr. Roos is Defendant's sole shareholder and the company's only individual authorized to sign IDC checks. Since Mr. Roos travels frequently, the parties had an arrangement whereby Mr. Coffin would send prepared checks to Mr. Roos' locale where Mr. Roos would sign them and "overnight" them back to Newport.
When this routine method was employed with reference to the remaining checks representing payment to Plaintiff, the checks were returned unsigned to Mr. Coffin without any explanation for the omission.
Ms. DeCosta was offered basically to explain the workings of various IDC entities and IDC's relationship to "Clambakes." Unlike Mr. Coffin, she had no personal knowledge of IDC's *Page 5 
difficulties with payments to various vendors, including utility providers. When asked if she had any information whatsoever as to why Plaintiff was not paid, Ms. DeCosta replied "you would have to ask Mr. Roos."
Thus, it is clear that neither the Chief Financial Officer, Mr. Coffin, nor the Assistant Director of Operations, Ms. DeCosta, were accorded any discretion or authority concerning the invoices in controversy.
This Court is compelled to conclude, based upon the convincing, credible evidence, as well as the absence of contradictory evidence, that Plaintiff law firm will, in all probability, obtain a judgment in its favor.
Furthermore, the anomalies in the Defendant's accounting system, combined with the largely inchoate income potential which may be realized by the Defendant, establish a definite need for security. The Court is also mindful that Defendant's principal, in whom singular authority is reposed regarding the satisfaction of invoices, elected to be absent from these proceedings when offered multiple opportunities for explication of the arrearage. Thus, the Court grants Plaintiffs motion for a prejudgment attachment in the amount requested, $219,752.05 against the property of the Defendant.
Plaintiffs counsel shall prepare an order conforming to this Decision. *Page 1